UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Rodolfo Leyva, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-08-1019 |
| | § | |
| J. B. Hunt Transport, Inc., | § | |
|    *Defendant*. | § | |

## Order

Pending before the court is defendant J.B. Hunt Transport, Inc.'s motion to compel arbitration. Dkt. 14. The plaintiff has not responded, and therefore under the local rules of the Southern District of Texas, the motion will be considered unopposed. S.D. Tex. Loc. R. 7.4 ("Failure to respond will be taken as a representation of no opposition."). Upon consideration of the motion, Hunt's Texas Injury Benefit Plan, and the applicable law, the motion is GRANTED and this case is DISMISSED with prejudice.

## Background

In 2004, Hunt elected to forego coverage of its workers under the Texas Workers' Compensation Act and established a private employee welfare plan. Instead, Hunt adopted the employee welfare benefit plan of its parent—the Texas Injury Benefit Plan ("the Plan"). Dkt. 14, Exs. 1, 2. Hunt notified all of its Texas employees, including Rodolfo Leyva, of the adoption of the Plan. *Id.* Leyva received copies of the Plan by certified mail. *Id.* at Ex. 1, ex. F. The Plan contains an arbitration provision mandating binding final arbitration for, among other things, "any form of physical or psychological damages, harm, or death which relates to an accident . . . including, but not limited to, claims of negligence or gross negligence . . . [and] negligent hiring/training/supervision/retention." *Id.* at Ex. 1, ex. A.

On September 30, 2005, Rodolfo was working for Hunt in Houston, Texas. Dkt 1, Ex. B. During the course of cranking up a trailer, Leyva sustained a hernia. Leyva filed suit on March 23, 2007 in the 157th Judicial District of Harris County, Texas for negligence. *Id.* Leyva alleges that Hunt's negligence with respect to training, inspection of premises, maintaining a safe work environment, failure to implement a safety program, and failure to warn of dangerous conditions caused his injury. *Id*. at 8-9. He claims damages of $26,446.45 for past and future medical expenses, $39,600 for lost wages, $300,000 for permanent disabling injuries, and $250,000 for punitive and/or exemplary damages. *Id*. at 6.

Hunt removed this case to the Southern District of Texas on April 2, 2008 predicated on diversity jurisdiction. *Id.* On May 2, 2008, Leyva filed a motion to abstain and remand arguing that Hunt was a citizen of Texas and therefore not diverse. Dkt. 5. The court disagreed and denied the motion, finding that Hunt was a citizen of Arkansas. Dkt. 12. Now Hunt moves the court to compel arbitration of Leyva's claim pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

## ANALYSIS

Courts use a two-step inquiry to determine whether an arbitration clause is enforceable as it relates to the dispute at hand. *See Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). First, courts must determine whether the parties agreed to arbitrate the dispute. And second, the court must examine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)).

### A. Did the Parties Agree to Arbitrate the Dispute?

This first question "depends on two considerations: (1) whether there is a valid agreement to

2

arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement. *Id.* (citing *Webb v. Investacorp*, 89 F.3d 252, 257 (5th Cir. 1996)).

### 1. Is There a Valid Agreement?

Whether there is a valid agreement between the parties is determined according to state law—in this case Texas law. *Banc One*, 367 F.3d at 429. "While there is a strong federal policy favoring arbitration, the policy does not apply to the initial determination whether there is a valid agreement to arbitrate." *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). Texas law is the same and will not invalidate an arbitration agreement absent compelling reasons of law or equity for the revocation of a contract, like fraud or unconscionability. TEX. CIV PRAC. & REM. § 171.001; *Emerald Tex., Inc. v. Peel*, 920 S.W.2d 398, 402 (Tex. App.–Houston [1st Dist.] 1996, no writ).

Leyva was hired prior to the adoption of the Plan. However, Hunt argues that Leyva, along with all Hunt's Texas employees received several notifications regarding Hunt's adoption of the Plan. Hunt submitted the affidavit of its claim coordinator, Craig Smith, with attached exhibits, including the return card from certified mail sent to Leyva. Dkt. 14, Ex. 1, ex. F. The Texas Supreme Court has held that continued employment after notification of an arbitration clause constitutes acceptance. *In re Halliburton*, 80 S.W.3d 566, 569 (Tex. 2002). In the absence of any evidence to contradict Mr. Smith's affidavit, the court finds that Leyva accepted the Plan with its arbitration provision when he continued his employment with Hunt. Therefore, there was a valid agreement to arbitrate.

### 2. Is the Dispute Within the Scope of the Arbitration Provision

Having determined that the parties have a valid agreement to arbitrate, the court now turns to a determination of the scope of the arbitration provision. "[O]nce a court determines that an agreement to arbitrate exists, the court must pay careful attention to the strong federal policy favoring

arbitration and must resolve all ambiguities in favor of arbitration." *Banc One*, 367 F.3d at 429. The court begins by looking at the language of the arbitration clause.

> The Employer hereby adopts a mandatory company policy requiring that the following claims or disputes must be submitted to final and binding arbitration under this Section 2.3: (A) . . . ; and (B) any legal or equitable claim by or with respect to a Participant for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; claims for assault, battery, negligent hiring/training/supervision/retention . . .). This includes all claims listed above that a Participant has now or in the future against [Hunt]. . . The determination of whether a claim is covered by the Section shall also be subject to arbitration under this Section. . . . This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.

Dkt. 14, Ex. 1, ex. A. As discussed more fully above, Leyva's negligence claim against Hunt is predicated on an allegation of injury received while on the job. Therefore, Leyva's claim expressly falls within the arbitration provision. Accordingly, assuming the decision regarding the scope of the provision was left to the court, it would find that the dispute is within the scope of the arbitration agreement. In this case, the arbitration clause calls for the arbitrator to determine whether a claim falls within the scope of the agreement. The result is the same either way—arbitration is mandated.

### B.     Legal Constraints External to the Agreement

Having determined that there is a valid agreement to arbitrate Leyva's claim, the court moves to the question of whether legal constraints external to the parties' agreement foreclose submitting Leyva's claim to arbitration. *Fleetwood*, 280 F.3d at 1073. "Just as it is the congressional policy manifested in the Federal Arbitration Act that requires courts liberally to construe the scope of arbitration agreements covered by that Act, it is the congressional intention expressed in some other statute on which the courts must rely to identify any category of claims as to which agreements to arbitrate will be held unenforceable." *Mitsubishi*, 473 U.S. at 627. Therefore, absent some showing that Congress expressly exempted negligence claims from arbitration, the presumption under the

Federal Arbitration Act is that arbitration must be compelled. *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 749 (5th Cir. 1996).

"[T]he burden is on [Leyva] to show that Congress intended to preclude a waiver of the judicial forum" for his negligence claim. *Gilmer v. Interstate/Johnson Lane Corp*, 500 U.S. 20, 26, 111 S. Ct. 1647 (1991). The Fifth Circuit has upheld a court's decision to compel arbitration on negligence claims like Leyva's. *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271 (5th Cir. 2007). And, Leyva has presented the court with no evidence that Congress intended any different treatment of his claim. Therefore, in the absence of a manifestation of Congressional intent to the contrary, there are no external legal constraints to compelling arbitration on Leyva's claim.

### CONCLUSION

Pending before the court is Hunt's motion to compel arbitration. Dkt. 14. The court finds that the parties had a valid contract to arbitrate the type of claim Leyva brings and that there are no external constraints preventing arbitration. Accordingly, Hunt's motion is GRANTED. Leyva's claim is DISMISSED with prejudice, because he has waived his right to a judicial forum for that claim.

It is so ORDERED.

Signed at Houston, Texas on August 29, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY